Good morning, your honors. John Morris appearing on behalf of appellant Mirama Enterprises, DBA, Aroma Housewares, Inc. The facts of this case, your honors, are not in dispute. And it's not my intention to spend any time discussing the facts unless the court has any particular questions regarding them. Instead, this case presents two pure issues of law. Both are issues of first impression and both, I submit, are relatively straightforward issues relating to statutory construction. The first issue, logically, I believe, to address is the question of whether or not, as a matter of law, the trial court erred by assessing any civil penalty in this case without requiring at least some evidence from the government, from the plaintiff, that there was indeed a product defect rather than some other explanation for the particular incidences in question. You said that there's a stipulation here, or at least there's no dispute. Do you dispute the fact that there is a defect as such in the product? Yes, sir, we do. We concede the fact... When we say product, we mean the model. The particular... The whole line, not a particular machine. Yes, sir. We dispute that there was a defect in the entire product line. And that's... In other words, there wasn't a single one of these juicers that had some sort of a defect in it? We don't know... Even though it was random or what have you? We don't know the answer to that question, your honor. The only thing we do know, and that which we don't dispute, is that there were 23 reports of product incidences, of product, various degrees of product incidences, over an approximately 11-month period of time. And did you investigate any of those 23 incidents? Yes, sir. There was an investigation. Sure. And did you conclude that there was no defect with respect to any one of the 23? We concluded preliminarily our belief that the incidences were caused not as a result of product defect, but as a more likely result of consumer misuse. Where does defect appear in the statute? Where does defect appear in the statute? It appears in the statute, your honor, at 15 U.S.C. section 2069, I believe. Give me just a moment, please, to orient. 2069B, under the relevant factors with reference to fixing a penalty. Specifically, the statute says that in determining the amount of the penalty, the commission shall consider, and it lists a number of factors, but the first factor it lists is the nature of the product defect. Therefore, I submit that as a matter of law, it was incumbent on the United States, before even addressing the court with reference to allocation of a penalty, for the CPSC to undertake, on its own behalf, some level of investigation to determine that indeed the incidences were caused not by misuse, but rather by way of, by reason of a product defect. Your Honor, if it's just in the absence of a defect, just an unreasonable risk of injury? Well, the distinction you draw, your honor, is a good one, and played an important role in this case. Recall that this case was bifurcated. There's no particular statutory provision for bifurcation, but in this case, the trial court addressed some threshold issues first by way of motion for summary judgment. In the context of the motion for summary judgment, the trial court determined that there had been a reporting violation. There had been a reporting violation because, according to, I believe it's 15 U.S.C. 2064, there's an obligation to report if there's sufficient information from which the manufacturer could conclude that there was a product defect or could conclude that there was an unreasonable risk of injury to consumers. The trial court expressly, in the context of the motion for summary judgment, did not reach or conclude that there had been a defect. Indeed, there was no evidence of that. It concluded rather, and it's a lesser finding, I submit, concluded that there was at least sufficient information from which Aroma could have concluded that there was an unreasonable risk of injury. So I'm sorry. As you read the statute, unreasonable risk of injury and defect are separate prongs? Yes, sir. So you have to report. Well, they're separate prongs, but one can be found in violation of the reporting obligation if there's a finding of either. If there's a finding either of a product defect or that there was sufficient information from which a reasonable consumer should have concluded unreasonable risk. Right. They're separate prongs for triggering the. For triggering. Yes, sir. Due to the report. Yes, sir. But your argument is when you get to the penalty, you have to have a defect. Yes, sir. My argument. Just unreasonable. Simply concluding that. This is based on this section. Based on 2069B. Which talks about defects. Which talks about relevant factors in consideration for the CPSC to determine or in an effort to assess a penalty. Okay. So what if we take this section and say, okay, there is no product defect. So we assign zero to that factor. Okay. We still have severity of the risk of injury, the occurrence or absence of injury, and appropriateness of penalty. So you've got several factors, one of which is defect. Defect becomes zero. I don't know how that gets you out of how that. Well, I submit it does, Your Honor. And I submit it does because it's a mandatory requirement on the CPSC, before it even moves for an assessment of penalty, that it shall consider the nature of the product defect. And it does consider it. And it says we consider it and there is no defect. Well, that wasn't, that wasn't. Was there a finding? No. There was no finding that there was a product defect. There was a finding in the context of the preliminary motion for summary judgment that AROMA had sufficient information from which it should have concluded there was unreasonable risk of harm. We contested that in the trial court. For purposes of appeal, we've accepted that. We've accepted that there was at least sufficient information from which we could have concluded a reasonable risk of injury. But neither at the preliminary motion for summary judgment nor during the second bifurcated damages phase was the plaintiff put to the task. It seems a little silly, doesn't it, to say you can have a reporting violation either if you have a defect or if you know the reason for injury. But if you breach that, you get a penalty if there's a defect, but you don't get a penalty if there is no defect. When, in fact, if there's a reasonable risk of injury, whether because of defect or because consumers tend to misuse it or, you know, whatever, you still have exactly the same problem. As you frame the question, Your Honor, I think that sounds a little bit silly, too. But what I'm suggesting is something a little bit different. That at the time of the penalty, the statute sets forth the relevant considerations with respect to fixing a penalty. It says what the government shall investigate and I submit evidence on. The primary consideration with respect to assessing a penalty, a penalty which I argue, and we'll turn the corner to our second point in just a minute, the penalty no more up to $5,000 per violation, that there's no way for the government to request a penalty or for the district court to finally fix a penalty without having heard evidence of what the nature of the defect was. And here there was no such evidence whatsoever. Why can't they say, look, we assume there's no defect. We are willing, you know, we've sort of done a preliminary investigation and we think what's going on here is this is consumer misuse. And the consumer, but it's kind of consumer misuse that happens more frequently because of the way the product is designed. And therefore, we should have had this reported so we could do a recall or whatever we do. No defect. Fine. No defect. And you should have told us sooner. And because you didn't tell us sooner, you are now going to suffer the penalty. And because you don't have a defect, we'll penalize you less, but we'll look at the other factors and come up with a penalty. And had the United States asserted its case in that fashion, my complaint would be substantially diminished, if not, if not obviated entirely. But that wasn't the theory on which this case proceeded. The theory, the case proceeded on a bifurcated, on a bifurcated plane where the preliminary evaluation was simply was there a reporting defect. No where. I'm sorry. I'm sorry. A failure to report. Thank you, sir. A failure to report. In the second phase of the trial, the defendant sought to compel the plaintiff to introduce evidence of defect. The trial court wouldn't permit that evidence, wouldn't require that evidence. Again, we submit, and I have nothing more to say on this. I mean, I can submit it and leave it for your resolution, but the argument is that at some phase of the proceeding, it was incumbent on the plaintiff, on the government, to introduce evidence not just of the fact of the incidences, but rather on the nature of the defect in order that the trial court have sufficient information to assess a penalty somewhere in the penalty range of zero to $5,000 per violation. That's my first argument. In light of my time constraints, permit me to turn the corner and talk about the second issue, which frankly I think is more compelling still. This question again is a pure issue of law, again an issue of first impression, and again a matter of, I believe, pure statutory interpretation. The issue in this case is whether or not the trial court erred as a matter of law in assessing a penalty in excess of the statutory maximum, where the statute specifically provides for a maximum penalty of no more than $5,000 per violation. Now, I began my argument by saying that we don't contest the facts of this case. What I meant by that was we don't contest the fact that there were 23 separate reports of product incidences between the relevant time period, January, I believe, of 1998 and November of 1998. There were 23 separate incidences. Fair use to the court. It doesn't say incidences in the statute. I'm sorry. It doesn't say incidences in the statute. It talks about with respect to each product involved. No, sir. With the separate quote? With respect to each consumer product involved? No. The quote, if I may, Your Honor, the quote is a maximum of $5,000 for each such – well, the statute precisely provides that it's a violation not to report and that there should be a maximum of $5,000 penalty for each such violation. My argument – You're at 20 – sorry. Go ahead. Go ahead. You're at 2069A. Is that where you are? Yes, sir. 2069A1. Is that where you are? Yes, sir. All right. I just want to be sure. Yes, sir. Okay. And so my argument here is that at a maximum, at an absolute maximum, there were 23 violations here. I think a good argument can be made that there was no reporting obligation upon receipt of the first incident, maybe not the second, maybe not the third. So we could quibble over whether or not there were 18 or 20 or 21 different violations. But I – But you can't really report future malfunctions because you don't know. Let's say after three of these or four of these or five of these, you get to the point where you should have reported. You can't say, oh, well, I've got 20 more or 18 more which are going to become defective. What you're always reporting is you're always reporting your future output of unbroken items. Okay. I accept that. You certainly can't report with respect to the future. You haven't received those reports yet. But at the time you make your initial report, that satisfies your reporting obligation. And your penalty, if any, would then be assessed with reference to those. But the risk that there will be an injury or a malfunction attaches to every one of those things that you send out. You now know that sometimes these things malfunction, so we are sending them out. Each of them is defective in the sense that each of them now has attached to it a certain finite risk that they will injure somebody. Well, I submit that there's a certain finite risk that any product will injure anybody anytime, anywhere. Certainly so, but you don't have a duty to report that. Right. Once your duty to report it is triggered, then you know about the risk. There are lots of unknown risks. Of course. So fortunately for your company, those are not yet covered. But once you get notice of the risk, when you keep sending out the product with the I don't see any problem with that. I'm sorry. I didn't understand the court's last point. I'm sending out products. Yes, sir. As to which you now know there is a particular risk of injury. Well, we're not sending out products. The products are already in the marketplace. Well, you continue to send them out. As it happens, I think not during this time period because that particular model had been discontinued and superseded. I'm not trying to quibble. I'm just trying to make sure that the court is on the right path in this question. You're not pulling them back. You're not calling up and saying pull them off the shelves. You've got them out there for consumers to buy. That's correct. You're continuing to leave them out there in the marketplace for consumers to buy. That's correct. At a time when you know that each of those products has a risk of injury. Hence our obligation to report to the CPSC and hence the CPSC. You don't report just as to the future ones that are going to break. You report as to everything. You say we've got. Of course. Of course. Thousands of these out there and here is our determination. Here's what we know about the risk of injury. You tell us whether we need to recall them, whether we need to repackage them. Precisely. Or whatever. Precisely. By failing to do that as to your entire product line that's out there in the consumer public, you're violating as to each of those. Well, I accept again, Your Honor, that there's a violation. The violation, though, is failure to report. There were 20. I submit and I stand firm on my argument that there was a maximum of 23 violations. When we received the first report. The first violation is failure to report. Yes, sir. It is not failure to report things that are broken. It is failure to report. Correct. That based on things that have broken, you now know that you've got a product line that is risky. Yes, sir. And that attaches to every product out there that is yet to go into the hands of consumers. Yes, sir. And that's why. That's the violation. It's not failing to report. Broken products are simply evidence, are simply proof of a risk that attaches to your unbroken products. Okay. And when a report was ultimately filed in November, I believe, of 1998, it specifically listed where all of our products had been sold to and in what number. And so when we made a report. I'm sorry. It was late. Well, it was late, and that's why we're being penalized. And we accept that. And we accept the fact of our penalty. We accept the fact of our violation. In point of fact, we submitted in the trial court that we weren't aware of our obligation. The trial court didn't rule in our favor on that. And I'm not challenging that finding again. We accept that now. We accept that there was a reporting violation. I accept your acceptance. Thank you. So while we're talking about that. Okay. But the point here, though, Your Honor, again, is that the fault was the failure to report. The violation is failing to report. Right. We failed to report once when we got a report that should have triggered our act. We failed to report a second time. What you did is you allowed your product line to remain in the hands of the public when you knew or should have known that you had to report and get further directions from the CPSC. Your violation consists of leaving all those products out there, all those products out there where consumers can buy them and might get hurt. Violation occurs to every item out there. Well, I submit, Your Honor, that that would be a holding of first impression and would not be consistent and would not be consistent with cases that have addressed this situation in analogous context. For instance, the CPSC has been involved in several lawsuits, primarily advanced under the Federal Hazardous. You do understand the theory. I do understand the theory, Your Honor. It doesn't. It doesn't. It's not an illogical theory. Well, I. Don't we owe Skidmore deference to the agency? I'm sorry, Your Honor? Do we owe Skidmore deference to the agency? Do we owe deference to the. Skidmore. Skidmore. I'm sorry, Your Honor. I can't speak to that. I'm sure the answer is yes. I mean, of course, you owe deference to the trial court. But I'm not familiar with the Skidmore case. I'm sorry. Agency. I suspect. I'm willing to accept that you owe. Chevron. Okay. I'm willing to. I'm willing to. We all know that one's on questions of Mr. Court. Okay. I accept that, Your Honor. But still, I believe that there is sufficient basis in the case law as it exists and sufficient basis in the statute as it was written to support the argument that the number of violations is not computed with reference. That's what I was asking you before. You have 2069 in front of you? I have it. Yes, sir. Okay. It says that violation of Section 2068A, and we're talking about 4, right, shall constitute a separate offense with respect to each consumer product involved. It doesn't talk about with respect to each billiard report. It talks about with respect to each product involved. And that language was specifically interpreted, Your Honor, in I believe it was the Toys R Us case cited in my brief where there was a had to do with the CPSC enforcing a claim against Toys R Us for violation of the Federal Hazardous Substances Act. In that case, Toys R Us was being assessed a penalty for importation of hazardous toys. In that case, with language exactly parallel to what Your Honor just read, the court found that the reference that the reference to violations for each I'm sorry, I don't have the particular language you just quoted right in front of me. As to each consumer product was a reference to the larger category of products, such that I think Aroma could reasonably have argued that only a single penalty would have been appropriate in this case because there was only a single product, that is to say the single juicer, the AJC 250 or whatever it was called. Well, let's say you could interpret it that way. That's not the only interpretation. I accept that. Okay. Well, why wouldn't it promote the intent of Congress to say that when we're talking about each consumer product involved, we're talking about each consumer product that's in the marketplace? Well, again, Your Honor, I'm back to the point that the violation is the failure to report. The violation is not the fact of having products out in the marketplace. The violation is the failure to report. But the consequence of the failure to report to the consuming public varies greatly depending on how much product you have out there. If you've got ten things out there and fail to report. Of course it does, Your Honor. The injury to the public in suffering the risk is much less than if you've got 100,000 products out there. Of course it does. And that's precisely why, Your Honor, I submit that under 2069B, one of the relevant factors in consideration of how much of a penalty to assess is expressly listed as number of products in the marketplace. My point is that I believe we can infer from that that the legislature expressly considered the very point Your Honor just makes. That is that the amount of the penalty should vary according to the nature of the defect, the severity of the injuries, and the number of products in the marketplace. So the number of products in the marketplace is expressly provided for by statute, expressly contemplated that it bears into the analysis. I accept that. The question we have, though, is where does it bear in the analysis? Does it constitute a separate violation as to each product in the marketplace? Or is the number of products in the marketplace merely a factor in determining the amount of the penalty per violation? I submit it's the latter. I submit that the proper interpretation, and I see that my time is well gone, and I would like to have a few moments to rebut if I may. So let me conclude by saying that I stand on my proposition that as a matter of law, the maximum penalty here per violation is $5,000. The maximum number of reporting violations is 23. Hence, the maximum civil penalty assessed should have been $115,000. And as a final point, I submit that that is a substantial and meaningful amount of money, which effects a real meaningful penalty on AROMA, and I don't believe that it's necessary to accomplish the statutory purpose that the court, what I regard as bending the statutory language in an effort to afford broader deference to the trial court. With that, I'd like to reserve a few moments, if I may. May it please the Court, Patrick Jaspers with the Department of Justice on behalf of the United States. The plain language of the Consumer Product Safety Act supports the district court's interpretation that each individual hazardous product counts as a separate offense. Would you take us through the plain language? What specific language are you relying on? Your Honor, there's three interlocking statutes. Starting with section, and I'll start from the back. Starting with section 2069A1, any person who knowingly violates section 2068 of this title shall be subject to a civil penalty. And then it clarifies, unambiguously, a violation of section 2068A4 of this title shall constitute a separate offense with respect to each consumer product involved. Okay, when you get to A4, A4 says it shall be unlawful for any person to fail to furnish information required by 2064B. Correct, Your Honor. Failure to furnish information. Failure to report, in other words. Right. And what it refers to is section 2064B, which says that a company has to report when they obtain information that reasonably supports the conclusion that a product contains a defect or creates an unreasonable risk of serious injury or death. So the first issue on appeal is what is the meaning of consumer product in 2064B? And the statute defines consumer product. Section 2052A1 defines consumer product as any article or component part thereof, etc., etc. And article, as the dictionary points out, and as AROMA concedes in its appeal, on page 8 of its reply brief, article means each individual item within a class, not simply a whole class of products. Okay, but how does that get to 40,000 under 4? That's where I'm stuck. I understand the failure to furnish information violation, which apparently your opposing counsel does not contravene. I don't understand how you get from there to 40,000 products. Failure to furnish information is with respect to each consumer product involved. That's where 2068A4 is referring to 2064B2. Well, now, wait a minute. There are 23 instances of failure to report. Is that correct? Yes. So you multiply 23 times 40,000, and that gives you the total number of products that are out there? I'm assuming in the space of 11 months, they can't have sold that many more than this 40,000, which appears to be kind of the average number. No, the total number of products that were in the marketplace were 30,000 to 40,000. Okay. What the government proved in the district court is that the information that Aroma received about the 23 shattered juicers provided information to support a reasonable conclusion that all 40,000 juicers out there contained a defect or created an unreasonable risk. Okay, but under your theory, there were 23 incidents of failure to report. Each one had to do with 40,000 juicers, and therefore you could have a penalty which would be measured by 40,000 times 23. I agree with the last part of what you said. Our theory is that it's a violation to fail to report each consumer product which contains a defect or that creates an unreasonable risk, and there were 40,000 such products that there was information to support the reasonable conclusion contained such a defect or created an unreasonable risk. The 23 report, I mean, somewhere from Report 1 to 23, the duty to report kicked in, and once Aroma knew that the information it had about this small number reasonably supported the conclusion that all of the juicers contained a defect or were unreasonably risky. How does one test this either existence of a defect or reasonable conclusion? How does one go about doing that? Did the commission find that there was in fact a defect? Yes, Your Honor. The commission made a preliminary determination in February 1999 that the juicer contained a defect. Unfortunately, it's not in the United States Excerpts of the Record. It's Exhibit Summary Judgment Exhibit 52B in the underlying district court records. Was that subject to some sort of due process review? Was it challenged? Did the manufacturer have an opportunity to contest that? Your Honor, they would have. They did not. I mean, the way most of these recalls work is that the commission makes a preliminary determination that there's a defect and then goes to the company and says, we need to do something about this, please recall the product, and in most cases, including this one, the company cooperates and the recall is voluntary. The company does have the right for a formal review and for due process, and if that happens, the reason why the commission prefers not to go that route is it takes much longer. There's formal findings. There's hearings. So in most cases, the commission goes and says. The process usually does take longer. And so the commission goes and asks for a voluntary recall, and in most of these cases, that's what's happened. But I don't have this. A recall applies to products that are in the distribution process, or it also applies to products in the hands of consumers? How does it work in this kind of product? A recall generally would apply to products that are in the hands of consumers and that are out in store shelves waiting to be purchased. And the ones that have not yet been sold would just be pulled back. Correct. And the ones in the hands of consumers, would they be notices or something sent out? Well, if a company, you know, when you buy a product, there's often a card saying, please fill out your name and address. If that is true, I think in most cases the commission would work with the company and the company would send out a letter to everyone in their database that they have. In this case. Both of the people who attend the card. What's that? Both of the people who attend the card. Right. Correct, Your Honor. In this case, there were no cards. So the way a recall is publicized is stores that sold the product posted. What I was actually trying to nail down is the fact that the product has been sold does not take it from the other universe of products that are out there subject to a recall. Right. No, a product that's sold is still subject to a recall. Yes. A product is still a recall and the company is still responsible for it. Right. They're supposed to make reasonable efforts to let consumers who purchase the product know. I wonder if I misunderstood an answer you gave to Judge O'Scanlan. You don't claim, do you, that there were 23 failures to report? No, we claim that there were 30,000 to 40,000 violations. There's one failure to report. That was triggered by one, two, 23 incidents that came to their attention. Is that right? That's correct. There's one duty to report, and under 2069A1 it says it's a separate offense with respect to each consumer product involved. And that's the issue. What constitutes each consumer product? Right? Correct. We're talking about just the ones that came to the attention of the company or whether all the ones are out in the marketplace? Correct. And, again, the statute defines consumer product to mean each individual item, not a class. And, I mean, the issue of how you interpret the statutory language clearly is a matter of statutory interpretation that gets de novo review. But the district court made a factual finding. It's on pages 243 to 44 of the United States Excerpts of the Record that the information AROMA received about these 23 shattered juicers reasonably supported the conclusion that all 30,000 to 40,000 juicers that were out in the stream of commerce contained a defect or created an unreasonable risk. AROMA's interpretation not only misreads the words and definitions that are in the statute, but it also adds additional words of limitation that are not in the statute. You say, look, you have shown there's a defect. We know that 23 of these shattered, but they may have been because of misuse by the consumer, which may not be a defect. Sometimes that's a defect you've sort of designed in a way that consumers will misuse it, but maybe it's not. Maybe consumers are just careless. Your Honor, the statute does not require the government to prove a defect. The statute requires the government to prove it. In the section that the opposing counsel was pointing to that says determining the amount of penalty, you have to look at the defect. Your Honor, with Section 2069B, the word shall there is directed to the commission, not to the courts, and though not required to do so, courts can apply these factors as appropriate, along with the usual civil penalty factors such as deterrence, bad faith, vindication of the agency's authority, and that's exactly what the district court did. But looking at it, 2069B, the commission shall consider the nature of the product defect, severity of the risk, occurrence of the absence of injury, the number of defective products distributed. Where in the record could I find findings made by the commission to establish that there was a product defect and the number of defective products that were found to have been distributed? I'm not sure there are any such findings in the record. I mean, the commission considers these. How do we test this, then? I'm sorry? How can we review this? Well, Your Honor, I mean, if the way these cases work is that the commission administratively examines these factors, tries to resolve it with the company. If there's not a resolution, it gets referred to the Department of Justice, and then we file a civil complaint under these statutes. Yeah, but we have judicial review of agency action in this country, and what we're trying to find out is what is it that permits the commission to impose a $300,000 fine with respect to this manufacturer? And I haven't found, I haven't been able to connect the dots yet. Well, Your Honor, the commission didn't impose a $300,000 fine. The district court imposed a $300,000 fine. Well, is the test any different? Is it still 2069B that we're? Your Honor, I believe that when these cases reach the district court, the district court should look at the factors in 2069B, which the district court did in this case. The district court is also free to consider the general range of civil penalty. Did the district court make a finding that there was a defect and found that the number of defective products that were distributed? No, Your Honor. The district court found that what AROMA knew about the 23 created a duty to report about the 30,000 to 40,000. Now, I'm concentrating on the computation of the fine. This case raises the question of whether the $300,000 fine was proper or not. I mean, that's what this case is all about, right? Isn't that what the manufacturer is appealing here? Yes, Your Honor, although they're really not challenging that $300,000 was not legitimate based on the factors. They're saying that as a matter of statutory construction, there should have been zero. The court should never have even gotten to that. There should have been a zero fine. Well, that's supposed to 100 and whatever. It's 150,000 something. Yeah. 5,000 or 6,000 times. Well, that's the first argument. But if the court interprets the second argument the way that AROMA advocates, I guess it would be remanded to the district court for the government to have to prove defect at the penalty stage, even though there's no requirement for the government to prove defect at the liability stage. And generally, the burden for the government is... That's why we have the statutory construction problem. You're relying on 2069B to validate the fine, are you not? Isn't that the government's position, that the fine is justified by 2069B? I'm not sure that's really an issue on appeal, Your Honor. They're saying that if you don't prove defect, you don't get a penalty at all. They're not saying that based on the number of products involved, based on the nature of the defect, this fine should have been $100,000 instead of $300,000. It's not really a case about whether the district court had the discretion to go where it did. It's a case about whether under the statute the government is entitled to a penalty at all. All right. Put that off to one side. The question still remains, did Judge Huff properly assess a $300,000 fine in this case? Am I right so far? Yes. I mean, they're challenging Judge Keefe's $300,000 civil penalty. Judge Keefe. I'm sorry. I meant Judge Huff. Judge Keefe. Yes, Your Honor. And in order for it to be validated, it has to have been found to be in compliance with 2069B. Am I right on that or not? Your Honor, our position is that 2069B are factors for the Court to consider when appropriate. Okay. And where would I find that the Court indeed considered these factors? Your Honor, the Court made oral findings of fact at the end of the penalty hearing. It's in the United States excerpts of the record starting at page 242, and it goes on through the end of the excerpt of the record on page 254. Do we owe the agency any deference at all in interpreting the statute? Your Honor, I think this case is controlled by Chevron step one. I think the statute is unambiguous, and you never get to the regulations. But if the Court should disagree with me on that, I think you are correct that the agency is entitled to skid more deference, not to Chevron step two deference. The commission's regulations were actually promulgated under notice and comment procedure. However, because the statute did not require notice and comment, and because the commission itself has interpreted the statute, has couched its regulations as interpretive, I think they are entitled to skid more deference. And I believe that if you look at the regulations, they are logical, they are reasonable, and the Court should give deference to the commission's interpretation that has been expressed. Based on the regulations? Yes, sir. Okay. And if I could go back to Judge O'Scanlon's concern about 2069B. However this Court interprets section 2069B is going to govern all of the requirements in 2068, which are a number of provisions. And many of the provisions in 2068A have nothing to do with defect. For example, section 2068A2 prohibits selling products that have been declared banned hazardous products. A banned hazardous product is not necessarily defective, so requiring proof of defect makes no sense when applied to that provision. Similarly ---- But aren't you relying on 2068A4 for the violation here? Isn't it ---- Yes. In other words, that the manufacturer has failed to furnish information required by 2064B. Yes, Judge. The violation here is 2068A4. However, the argument that defect is required to assess a penalty is rooted in 2069B. And however the Court interprets section 2069B covers all of 2068. And there are a number of provisions under 2068 which have nothing to do with defect. For example, 2068A3, 6, 8, and 10 all contain various information sharing requirements. Requiring the government to prove defect simply makes no sense when applied to those provisions. And most relevant to this appeal, section 2064B3 requires a company to report when there is information that reasonably supports the conclusion that a product contains, creates an unreasonable risk of serious injury or death. The whole purpose of 2064B3, the very reason it was added to the statute, was to make clear that companies should report dangerous products aside from any defect analysis. And if the Court requires, if the statute is interpreted in such a way that there's a duty to report, but there's no way to enforce the duty to report, it simply becomes a hollow statute. What regulation that we should defer to bears on how you calculate the fine? I don't think there's anything in the regulations that say anything more than these list of penalty factors in 2069B. That's in the statute. Right. And I think the question was asked before, do we give deference to the agency? And we talked about regulations. I'm trying to find some regulation that bears on this. Your Honor, I don't think that, if I can recall my reading of the regulations interpreting the statute, are all at 16 CFR 1115.1 and forward. Right. As I recall, I don't think there are any regulations specifically on point in terms of what factors should be considered that elucidate anything more than the list of factors that are in the statute itself. That's what I thought. Yeah. Really nothing to defer to on that point, then? Correct. I think the what — I'm having trouble following your argument, counsel. I'm going to say, you earlier said this is a Skidmore deference situation. We ask you, where is the regulation that we should defer to? And you say, well, now you say, well, it probably doesn't matter. You know, Your Honor, there's two issues on appeal. I think there are regulations on point that go to the first issue on appeal, which is interpreting how many — what you multiply the 6,000 times. And on there, there certainly are regulations that's — All right. Is that 1115.1? 1115. — I believe it's 1115.6 contains language that is of relevance. That's 1115.12, I believe. In the regulations, it states very clearly that test results could trigger the reporting duty. Scientific studies could trigger the reporting duty. Quality control data that the company has could trigger the reporting duty, all of which undercuts this argument that you simply — that the only types of reporting duties are created by consumer reports. I mean, their argument is that you count up the number of consumer incidents that are reported and you multiply that by $6,000, and that's the maximum fine. The reporting duty, however, is triggered by information that reasonably supports the conclusion that the product is — We would find that in 1115.12. Point six, isn't it? 4.6. I'm trying to figure out where I should go to evaluate your argument. 1115.6A, 1115.12F, and 1115.14C all discuss what types of information can create the duty to report. And which is the reg that deals with the assessment of the fine? What you say tracks the statute, but I still want to see what the regulations say. Your Honor, as I page through the regulations quickly, they're not that lengthy. I can't find any regulation by the commission that says anything. Should it be in this 1115.1 at SEC? If there is anything, but I think — Did you say, if there is one? Is that what you just said? I don't know that there's a regulation that goes to the penalty factors. I think the — But you said earlier that there was, and it didn't say any more than the statute. I may have misspoken about that, Your Honor. I'm not entirely certain. There are regulations that I think are relevant to point one on the appeal. Is the government's alleviating position entitled to skid more difference? I don't know the answer to that, Your Honor. Okay. Thank you. Thank you. Thank you, Your Honors. I'm aware I've used most of my time. Thank you for indulging me for just a moment. I'd simply like to restate my position so that it's the last thing on the Court's mind when it recesses, and that is, one, as a matter of law, before the CPSC could attempt to assess a penalty or before the district court could impose one, it was incumbent on the government to introduce at least some evidence of product defect. Merely indicating evidence of report incidences was not sufficient. That's argument one. What about this reasonable likelihood issue? Oh, I accept that that — yes, Your Honor, I accept — Is that the same as product defect? No, it's not the same. It's different. But in the — with respect to the fundamental reporting obligation, those two are presented as either-or. You have an obligation to report if you either have knowledge of defect or if you have knowledge of the reasonable risk of harm. We accept that we had the latter. We contend, we assert, that there was no evidence of the former. And absent evidence of the former, it was impossible for the CPSC to either seek a penalty or for the district court to impose one.  The violation is the failure to report. A violation is the failure to report. There were no more than 23 failures to report. In this case, we — I think the disagreement is of what it means to report. You want to say what you're reporting is we're reporting we've got 23 damaged items. And the agency is saying is what you're reporting is we have a problem with our product. Correct. Which you can tell from the fact that we've got 23 damaged items. But we could also have come to the same conclusion because we did some laboratory testing and we just even though no incidents occurred out there, we've got a product that we've determined in the laboratory is — creates a risk of injury. And so you might not even have a single — a single incident in the public and you still haven't used the report. Correct. And your failure to — The report would apply to the entire product. Of course. That's the agency's position. Of course. Of course. And when the report was made, it contemplated and reported with reference to all of the above. The violation — 40,000. Oh, yes. Oh, yes. When the report was originally filed in November, and it's in the record. It's like page 129. I forget, but it's in the record. The report specifically articulated the number of products in the marketplace and to whom they had been sold. The single report. Final point, if I may. I know my time is up. But final point, if I may. If the court accepts the government's argument in this case, if the court accepts that once there's an obligation to report, triggered once, that the penalty can be assessed with reference to the number of products in the marketplace, then I submit it would lead to a totally illogical result whereby any manufacturer who had even as many as 300 products in the marketplace, and any manufacturer would have 300 products in the marketplace, any substantial manufacturer, it would — the single failure to report with respect to the 300 products would trigger the ability of the government to assess the maximum statutory penalty of $1.5 million. It doesn't make sense. The violation is the failure to report. You got information, you should have reported it. You didn't, you can assess as a penalty of up to $5,000. We get information a second time that suggests we should have reported and we don't, you can fine us another $5,000. That makes sense because it — because it continues to impose an ongoing duty on the manufacturer to report. Accept the government's argument and the very first time we fail to report and we have more than 300 products in the marketplace, we've already submitted ourselves to a potential liability of $1.5 million. Why should we report now at all? Maybe we'll get away with it. How do you get the 300 — what's the significance of the 300? Three hundred products times $5,000 equals $1.5 million. $1.5 million is the statutory maximum. For all of those reasons, thank you for indulging me, I respectfully submit that this Court should remand the case back to the trial court for further proceedings to consider whether or not there was any defect at all sufficient to assess any penalty and should further provide the district court with instructions that to the extent it finds a defect such that a penalty is appropriate, that that penalty should be restricted to the number of reporting violations and not be made with reference to the number of products in the marketplace. Thank you. Thank you.
judges: Kozinski, O'scannlain, Silverman